May it please the Court, my name is Joanna Kosch. Good morning, Honorable Justices Kuczynski, Kleinfeld, and Silverman. I'm here today on behalf of Appellants Xyris Corporation, Mukuit Dadaboy, Teresita Castaneda. Xyris? Xyris. Ah, okay, I didn't come anywhere close to it. Right, Xyris, of course. My clients are also Mukuit Dadaboy, Teresita Castaneda, and Atkinson Care Home. My clients were the defendants in the underlying wage and hour action. Counsel, help me a little bit on some things. Yes, Your Honor. If you had made a rule, I think it's 34, motion to be relieved of the admissions, and that were all there was to the case, I would be inclined to think it would probably be an abuse of discretion to deny the motion. But I have a couple of questions arising from different facts here, and I want you to address them. Yes, Your Honor. First of all, October 12th, that's well before the motion, but it's two months after the requests for admissions were served. At October 12th, Simoniano's lawyer filed and served a unilateral report, and I don't think that you ever disputed that you received a copy of it. Is that correct? Well, I actually was not the attorney in the district case. I don't care about you personally. I mean the defendants. No. They responded to the unilateral report. However, the issue of the request for admissions will never exist. They responded to the unilateral report but did not address the request for admissions? Yes. Now, as I recall, in the unilateral report, Simoniano said that he had served the request for admissions August 9th, they had not been responded to, and he attached a copy of the request for admissions to the unilateral report. Is that correct? The copy of the request for admissions were attached to the summary judgment. I know that, but what I'm asking is were they also attached to the unilateral report? I do not believe that they were. All right. I want Simoniano's attorney to tell me if I should look at something to see if that's correct. Did you say you were not the lawyer at the time of the unilateral report? Yes, I was not. I'm looking at it. It looks like it was mailed to you, though. Did you get it? Mine is Joanna Kosch, and it was Amy Kosch who was the attorney. She's a different firm? It's the same office, but I was not a part of the office at that time. Do you know if Joanna Kosch got it? Well, I'm Joanna Kosch. I'm sure Joanna Kosch. Do you know if Amy Kosch got it? I don't know. Do you know if the firm got it? The confusing issue is that the attorney in the case is my mother, and I do work in the same office now, but at the time that all of this occurred, I was studying for the bar exam. I was not barred, and I was not part of the office. Okay. Now, let me ask you about the next date here. There was a hearing, November 1, 2010. Yes. And as I recall, there was discussion at that hearing of the unilateral report. I can't remember if there was discussion of the unanswered request for admissions. What does the record show? Based on what happened at that oral proceeding at the hearing, the unilateral report was not discussed in detail. What happened was that the plaintiff, Mr. Simoniano, was allowed to come to court and submit his project. I don't care about the details or Simoniano coming to court. All I want to ask you right now is, was there mention at that court hearing where the defense lawyer was present of the unanswered request for admissions? That was not the key issue. The key issue was that it was not. I know it wasn't the key issue. I want to know if it was mentioned. No. It was not mentioned. No. Okay. Then the summary judgment motion came on the date that motions were due. There was a motion cut off in the pretrial order, right? Yes. And that was based on the unanswered request for admissions? Yes, Your Honor. Now, let me ask you about one other thing that happened before the discovery deadline and the motion for summary judgment. As I recall, the plaintiff's side tried at least twice to depose the lead defendant, and both times the lead defendant claimed to be unavailable for the deposition. Is that correct? That is incorrect. The first time he was unavailable for deposition. The second time he was available. However, plaintiff's counsel took the deposition off schedule because a settlement had occurred in the days leading up to it. Well, that settlement, that was, as I recall, the defense lawyer talking with the plaintiff personally outside counsel's presence and settling the case for a fraction of what it ultimately returned. Is that correct? That is not correct, Your Honor, because the parties themselves, the defendant and the plaintiff, met on their own. That's what concerned me. I mean, it's one of the really blatantly unethical things a lawyer can do is meet with the opposing party without the opposing party's attorney present. And I thought that's what happened. No. None of the attorneys were involved. They met at a Filipino restaurant, the parties themselves, and they were discussing Oh, the lawyers weren't involved. The lawyers were not involved. Okay. And then when the motion came, the opposition for the summary judgment contained within it a request to be relieved of the admissions. I remember that. But I don't remember a motion to be relieved under Rule, I think it's 34. I believe it's Rule 36. 36, thanks. You are correct that there was no formal motion made separately. The request was made separately. Tell me this. When I was a district judge, the clerk, the calendar clerk, used to keep a list of motions I had to decide before the trial. Whenever something came in that was labeled motion, it would go on my calendar. But she didn't read arguments. She didn't read memoranda of law. So she would never have calendared a request that was made just in the course of an argument and a memoranda of law. Does it work the same way in, I think this was the central district, that motions are calendared but arguments and memoranda of law are not? Unfortunately, I am not in a position to give you an answer to that. What we do know, though, is that however it was docketed, the judge considered the request and denied it. Right? Well, in the words of the decision granting the summary judgment, the request is not mentioned at all. Nor does the judge say that it wasn't made in the proper format. It's completely glossed over. Well, no, it's mentioned. It says the defendants declared they never received it. But the problem with that is that they failed to submit any evidence other than the declaration to overcome the presumption of receipt. Therefore, the Court concludes that the request for admissions were received and should be deemed admitted. Right? Look, Judge Kleinfeld's point is that you didn't make a motion, and therefore maybe the judge can't be faulted for not ruling on it. I'm trying to point out that the judge did, in fact, rule on it. And so it seems to me the ruling, right or wrong, is up for discussion. Wouldn't you agree? I think the answer is yes. The issue here is not only invoking Rule 36B to have the admissions withdrawn. The issue is proving that the mailing ever occurred. And the problem that we have to do is that the judge considered that. The judge considered that. And luckily for you, because she considered it, we're able to talk about it. If I were you, I'd stick with that. Yes. I believe that the judge conflated two legal presumptions in order to make a finding that the RFA was ever mailed in the first place. I do not believe, based on the decision, that she engaged in the correct legal analysis to find that the mailing ever occurred. She was relying on the presumption that a proof of service means that something was mailed. Okay. However, Rule 36S. You've got less than a minute left. Perhaps you want to say a little rebuttal. Okay. Thank you. Good morning. Good morning. Police Court, Dennis Rein, preparing for plaintiff respondent. Could you help me with some of the questions I asked? It's probably not your strongest ground that she never made a rule. I keep forgetting. 36. That's 36, motion for relief from the admissions. Go on. Restate for me any corrections that you think need to be made in what we've heard so far in the facts. Right. Well, with respect to the oral proceedings following the unilateral report, that record is not before the court. So it shouldn't be considered. I was present, and I can speak to that if the court would like, but it's not part of the record. We don't have the – it wasn't transcribed? It wasn't made part of the record by the appellant. Everything is part of the record if it's on the record. Well, there's no transcript of that. Excuse me. In what sense is it not part of the record? There's no transcript of that proceeding that's part of the record. The client will just ask you that question. So it wasn't transcribed. It doesn't mean it's not part of the record. Sorry, what? It just means it hasn't been transcribed. It wasn't part of the record on appeal, I think, is what you're saying. Is that right? That's what I'm saying, Your Honor. But I was there, and I can represent to the court that the summary judgment was discussed at that oral proceeding. Was – is there a declaration? Is there a declaration so that something is cognizable on summary judgment about that, about what took place at that? Was that oral proceeding in the courtroom, or was it an informal one in chambers, or what? No, it was an open court, and I believe a reporter was there. And are you representing that the unanswered request for admissions was discussed at that proceeding? I believe it was, because I remember – and, of course, I don't have the transcript, but I do remember that the discussion that I – You know, belief is a very dangerous thing to talk about. If you don't know, if you don't recollect, it's probably best to just say you don't remember. I think I – Again, I don't want to tell you what to say, because you were there. I wasn't. Now, what about – what about the – What was your answer? I'm going to say that I'm comfortable in saying that summary judgment was discussed. I don't care about whether summary judgment was discussed. And I believe it was in the context of the request for admissions. Look, when I ask you that question, I'm not looking to find out whether summary judgment was discussed. It is possible for something to be mailed and lost at the recipient's office or never delivered by the mailman, and I'm trying to find out whether they really should have known about the request for admissions. Now, in the unilateral report, was the request for admissions mentioned and was it attached? They were mentioned, but they were not attached. But as the Court knows, they were mentioned specifically. The date of service was there. Okay. Where is it in the excerpt? That's the excerpt of records, page 120. Thanks. And then in the motion for summary judgment, we indicated there was a telephone call with counsel during which the request for admissions were mentioned and the request for submissions were made. Is there a declaration about that? Yes, it's in the record. Where's the declaration saying that you told them on the phone? It's in the reply. What I'm looking for is a sworn declaration that shows that even if they didn't get the request for admissions when it was initially mailed or if they got it and misfiled it, something like that, that they still were told that it was there. Yes, they were told in that conversation. Just tell me where it is. On November 2, it's on supplemental, excerpt of record, page 18. SCR 18. Okay. So if I may, Your Honor, what we have here is on October 12, they were specifically advised of the request for admissions and advised that a summary judgment motion would be made. Then on November 2, there was a telephone conversation. The subject was discussed specifically. It was the prefiling, meet and confer. And then on November 17, the motion for summary judgment was filed. We have this period. And the request to set these aside was not made until the opposition on December. Look, I don't think you understand what I've been getting at. People make honest mistakes on requests for admissions, in which case, ordinarily, they get relief. People also make mistakes that are not honest mistakes. They're just defying discovery. In which case, requests for relief are ordinarily denied. And I'm trying to find out what evidence there is in the file to show this is one or the other. The evidence is that there were those repeated warnings, repeated statements. And if you look in this file, you will not find a letter to counsel saying, please provide a copy of these to me. What are you talking about? There is no notification to the court. Your Honor, what are they talking about? They are not telling us what's going on. They're just saying, please help us. There is no reaction whatsoever during this period of time between October and when they filed their opposition. Now, let me ask you a question, Mr. Reed. I don't think I've ever had the pleasure of having you in court before. I don't know you. You seem like a nice enough guy. But how do we know you really mailed the requests to admit? Well, there is the proof of the statement. You don't know that. I mean, you sign a statement that said I mail it and we take it at face value that it's true. She submits a declaration to the judge. She says, using the same kind of language you do under penalty of perjury, she never got them. The judge says that kind of statement from a recipient isn't good enough. It doesn't say she was warned and blew it off or anything else. All she says is that a declaration that says I didn't get it isn't clear and convincing evidence. Why is that right? The court did reveal all the evidence before it. There was a record before it. You're not going to answer Judge Silverman's question? Because I'm really interested in that question myself. So I know you want to talk about other things, but I'd really like you to answer Judge Silverman's question. Okay. So I don't understand. You weren't listening because you weren't thinking about what she wanted to say. Why is her declaration any worse than your declaration? Why? That's the question. And if why isn't this record wrong when it says a declaration saying I didn't get it is not good enough? My response to that would be, first of all, the law imposes a presumption of receipt upon mailing. Now, yes, it's true that we have these competing declarations. So what? So what?  But there's more. It's rebuttable. Those two declarations are not standing isolated alone. We have much more here because we have the law. She didn't rely on any of them much more. She just said a declaration isn't enough. If she had said, and furthermore, I think Ms. Gosch is a liar or Ms. Close has been not paying attention to the case and this is just another example, that I get. But if she just says a declaration isn't enough, that I don't get. I don't think the district court was required to provide a statement of decision. The court can be presumed to have read the record and the records. Well, but she was just plain wrong when she said the counterdeclaration is not enough. Just wrong. I mean, it may not have to give every reason. It may not have to give exhaustive reasons, but she can come up with the wrong reason. Well, I don't think. Why isn't the district court's statement saying a counterdeclaration is not good enough? Why isn't that just plain wrong? In the worst way, I don't know. Well, for example, Your Honor, in Bucknum and many other cases, it is held that a mere declaration of nonreceipt is not enough. There has to be more. There has to be some cooperative. I'm sorry. What case is that? Bucknum. It's a Ninth Circuit case. That's the case where a notice was mailed by the court. That's correct. And a lawyer saying I didn't get it when something was mailed by the court as opposed to competing declarations of lawyers, what we have here. But that happened. That happened. What happened on that? I didn't. Let me just get your answer. I would say that, yes, it's true that a court clerk mailed it. I don't know that a court clerk's declaration is more compelling, but there are other cases like that. A court clerk doesn't have any incentive not to mail it, though, like an opposing party does. Well, I mean, I guess if that was the thing, then why would I keep why would we keep saying we have these requests for admissions out there? Why was there no response to that? Look, that's why I ask those other questions. Mistakes are made at both ends. People mail things by telling their secretary, put it in the mail. And things sometimes get – mistakes get made in doing that. And also mistakes get made at the receiving end. Let me ask a little more about my other question that bore on whether the defendant was just blowing off discovery until it was too late to do it, basically. And that's the deposition. I understand one time there was a sick relative in Pakistan, so the plaintiff – or the defendant, rather, was gone. Was there some other attempt to take a deposition? There were many attempts to take a deposition. Is there a declaration or something like that that shows me the other attempts? It's in the unilateral report, and there's – the various e-mails back and forth are in the record. Okay. I've got the unilateral report here. The details of that were not included, but there are – The details are actually on the – But they are in the e-mails that are in the record. Is there something in a declaration that says, basically, I repeatedly tried to depose the defendant, and it was one thing after another, and they wouldn't submit to a deposition? I know those e-mails are in the record, and they're probably authenticated by somebody, but I'm not at this moment going to be able to give you the page. Fundamentally, in this case, there was, for sure, a dispute about whether or not they were received. Now, what we have from the defense was just simply a declaration, I didn't receive it, without any particulars. There's lots of cases that say that's not enough. The Court properly looked at the record, considered all these facts. It would be a simple case. If you get something, what sort of proof do you think they ought to offer besides a statement that it never came in the mail, I didn't get it? What else would you – What the courts say is that you talk about your procedures. You talk about you were there. What other attorneys were there? What are the other facts and circumstances? But in this case, I would submit that no reasonable trier of fact or person considering these facts could have believed that they didn't actually receive it because there are all these side deals going on at the same time. The counsels repeatedly advised that these requests for admissions were served and ignored, and any reasonable attorney in that context would have picked up the phone, would have sent the letter, would have asked the court for help, and it is completely silent in this record. It never happened. Speaking of picking up the phone, I just want to clarify this. I think Judge Kleinfeld may have touched on it. When the time to answer the requests to admit had come and gone and weren't – and they weren't answered, did you pick up the phone and call the other side and say, hey, where are your answers? No, I didn't, because we were dealing with this issue. This letter came. What does that stop you from calling the lawyer and saying, where are your answers? Well, it was obvious to us that there had been some kind of shenanigans going on, and I'm not sure the counsel wasn't involved. And so we filed a unilateral report to go to the court. We're not going to aggressively litigate this case. We're going to go to the court, tell the court what we know. I wasn't saying aggressively litigate. I said pick up the phone and call Ms. Gosch and say 31 days have transpired. We haven't gotten your answers. We didn't do it because they were saying the case was over. They said the case was over, and we needed to go to the court and ask the court, what do we do in the context of this unusual situation? Any kind of letter confirming that? Well, it's a unilateral report. That's how we went to the court. And the ---- This was the settlement worked out at the restaurant between the parties themselves without lawyers? Purportedly. They think you're sneaky. You think they're sneaky. No. But all we can use is the record. No. And I think the record supports the fact that we're not sneaky. When issues come up, we go to the court. We deal with it appropriately. We gave advance warning. It's all in the record. And there's complete silence. It's inexplicable on the other side. Now, if the courts throughout the nation ---- You could have picked up the phone and said, hey, we didn't get this request for admissions. You're late. That would have been the courteous thing to do. I mean, you know, if you want to talk about public behavior, could have avoided all of this. I don't think so. It's not about courtesy. It's about ---- Well, I understand that you don't think it's about courtesy. No. But, you know, it would be helpful if lawyers thought more about courtesy than ---- Having received a letter saying we're not participating and basically the case is over ---- Where's that letter? That is attached to the unilateral report. I've got the unilateral report here, and it says some things are attached and they're not. Yes. And so in the supplemental excerpt record ---- I was looking for it in the excerpt record. So where? Is there a question? The question is where. It's supplemental, and it is at ---- It's at 66 and 6. The supplemental excerpt starting at 66 through 77. 66 is a declaration. In the supplemental excerpt? We're asking you where the letter is. It's at SER 66. I got it. It's a declaration. No. Where's the letter? Are we looking at the same thing? Do you want to keep anything from me? Yes. It's page 75, Your Honor. So this is a letter from Mr. Simeone? It purports to be, Your Honor. I'm sorry? Yes, that's what it purports to be. I understand how this helps you. This is a letter from your client? Well, it purports to be. In fact, it wasn't actually composed by the client. It was composed by a paralegal that was evidently engaged by the defendants. Okay. So let's assume that the letter was drafted by defense counsel, but Simeone signed it, gave it back to defense counsel, and defense counsel mailed it to you. That's basically, I think, what you argue in the unilateral report. Right. Let's assume that. Where is the additional letter that says, is there something that says we're not going to appear for a deposition or respond to a request for admission? The defendant's deposition had been set. Then that correspondence was received, and so we decided we're not going to go forward with that deposition at that time. There had been several months of delay, but we decided we're not going to do that. Why not? You know that the private settlement is ineffectual until it's approved. That's the statute. We wanted to go to the court, and that's what we did. We filed the unilateral report to get instructions from the court as to what the court wanted us to do. And just if I may, in this context, the courts have repeatedly held just a bare assertion of non-receipt is not enough. There has to be more. If that were enough, then any litigant that decided to deny a receipt. Any litigant could say I mailed them and didn't. Sure. But a little bit more is required, according to the law, when you're denying receipt. We have you have me saying under oath that I served it, and I did. And then you have other references in the record. When I was in practice, usually there would be an affidavit from the lawyer saying after I didn't receive it, I called them. Nowadays, you can do better. Usually, like I imagine what people do, I imagine what I would do is send an e-mail so I could have a copy of the e-mail. Is there e-mail contact between the lawyers in this case? There are e-mails attached, and most of those relate to the deposition that we weren't getting. But so the request for admissions and other discovery were served on August 9. And so they're due in mid-September. And so then not that long after that, that letter that's attached to the unilateral report comes, and so we go to the court. And so there's not a long delay. It's just that it would seem prudent to let the district court know what's going on, not to keep litigating the case. The point I was making before was that if just a declaration of nonreceipt, nothing else is forced, basically requires the district court to say, yes, they're not binding, then the litigants have this power that the court should have. The court should have the power. It looks like the getting the – your ice is kind of thin on the presumption of receipt. It looks to me like the best thing you have is at SER page 18. November 2, I asked Ms. Gosch specifically why she had not been advised of the secret settlement. She had never responded to any of the written discovery I had propounded. At the time, Ms. Gosch did not deny having received any discovery. So you said, I sent you some written discovery. You didn't respond. And she didn't say, I never received any written discovery. Does she have an affidavit in this file, in this record excerpts and supplemental excerpts saying otherwise? All we have is her declaration in opposition to the summary judgment which says, I didn't receive it. Not that my office didn't receive it. Not that somebody else didn't receive it. Not that I didn't toss it in the mail. Nothing. What about the conversation? Does she have anything where she talks about that conversation? No. She has a declaration where she says she talked to Mr. Ronnie that same day, but she never addresses the conversation that I had. So you have a sworn statement saying you asked her why she didn't respond to the written discovery and she didn't deny receiving it. That's right. And she does not have a declaration saying we did not have a conversation that went like that? Correct. The district court had to do something. The district court had to decide this. Either they were received or they're not received. The district court has to make a factual determination, and it shouldn't be to set aside unless it's clearly erroneous. This Court decided properly, any reasonable trier of fact would, that they were received because the facts and circumstances of this case are so astonishing that an attorney would have all these warnings, all these notices, and do nothing. So the district court had to decide under 104. It's a preliminary matter, and the court made that finding, and this court should honor that and accept that. Otherwise, any litigant at any time can unilaterally have a trump card. Oh, I didn't receive it. That's it. Nothing more. Look at the whole picture here. Look at the entire universe of facts, and you get a strong, compelling feeling that, yeah, these were received, that there was gamesmanship, that the defendants thought, we're not going to do anything in this case because it's over. But, of course, it's not over without the district court's permission. And in this context, I don't think it's fair to say the district court erred. The district court looked at the facts, made a factual determination on a preliminary matter. It should be upheld. Okay. Thank you. Thank you, Your Honor. You have part of a minute for rebuttal. We'll round it up to a minute. Do you want to take it? All right. A few issues have come up that we've been discussing back and forth. I want to clarify that the order of the district court, while it does discuss Rule 36A and whether or not it's going to deem the admissions admitted, it does not address the 36B request to have them withdrawn. The law requires a two-part analysis where the court engages in a consideration of the truth-seeking function of the courts as well as judicial efficiency. None of that is mentioned anywhere in the decision. Further, the main issue we're having is the legal analysis regarding whether or not the RFA was actually mailed to establish that fact. It seems that in making its decision, the court is clearly pointing to the presumption that is tied to a proof of service. It doesn't say that they weighed the evidence, saw the declarations. Look, you're absolutely right on this. I mean, the law is that mailing doesn't prove receipt, and the law is also under the rule that requests for admissions do not have to be received. The responses are due 30 days from when they're served, and if the responses are not made within 30 days of when they're served, then they're deemed admitted. And what Wright and Miller says is that the proper way to interpret that is that service and not receipt controls, but ordinarily relief from admissions ought to be granted on a motion for relief based on nonreceipt. So your law is good. Do you have any more facts? In terms of facts, there is an issue about what was discussed during the November 2nd telephone call, the meet-and-confer telephone call. There is a declaration from the attorney, Amy Koch, who received a phone call from Robert Ronnie, and that conversation had to do with the judge's order during the discussions in court that they should negotiate about this supposed out-of-court settlement. She says she wanted to negotiate about it. Yes. And the requests for admission were not discussed during that conversation. The other side says they were, and I looked at her declaration, and I can't see anything in it where she says, no, that's not true, they weren't. Well, in her declaration, she states what was discussed. She doesn't affirmatively say we did not discuss it. Isn't it a different conversation? Was it the same conversation? The declaration we have is from Mr. Vine, not from Mr. Ronnie. I'm sorry. The only conversation that took place was with Mr. Ronnie. There were two attorneys in this case. So I'm not clear. If you look at the supplemental excerpt from record, page 18, there's a declaration from Mr. Vine saying he had a conversation. And according to the declaration ---- Is that the same conversation? Based on the record, based on what I've looked at, I cannot say whether it was the same conversation. The attorney for Pellance submitted a declaration clearly indicating that she had one conversation. That conversation was with Attorney Ronnie, and the subject of that conversation was whether or not they were going to negotiate about the out-of-court settlement. There was no ---- So as far as the record is concerned, there's nothing contradicting Mr. Vine's declaration that he had a conversation with Amy Gorsh on November 2nd, and that he specifically asked about her failure to respond to the written discovery request. Well, the declarations talk past each other. It's true that the declaration doesn't affirmatively deny whether Mr. Ronnie discussed the request for admission, but the declaration also clearly sets forth that the only conversation that took place was with Attorney Ronnie. I'm sorry. Where is the Gorsh declaration? The Gorsh declaration was attached to the summary judgment opposition. Is this the one on ER page 13? I'm looking at ER 62 for the meat of it, but should I be looking at ER 13? It's a different declaration. Is this the one on 60, 61, 60? It's the one. Yeah, I think it's on 62. There we go. I received a phone call from plaintiff's attorney, Robert Ronnie. During this conversation, Mr. Ronnie asserted it was the judge's instruction at the hearing on November 1, 2010, that causes of action should be added against defendants in the attorney, and he threatened that he may have to do that. I don't see why she says that's the only conversation she had that day. Then Einstein corrected. She did not state that, but that is my understanding of what occurred, that there was only one telephone call from one of the attorneys, and that was the subject that was discussed. And that's why in the Gorsh's opposition to the summary judgment, she was pointing out the fact that the local rule requiring meet and confer was not complied with because they never made mention of the motion for summary of judgment. What was discussed was what happened in that hearing on November 1 where the judge said you guys should get together and talk about this out-of-court settlement. That's what was discussed. Okay. Thank you. Case is argued and submitted.
judges: Kozinski, Kleinfeld, Silverman